# CASES

# APPELLATE COURTS OF ILLINOIS.

## Second District—May Term, 1898.

### William Kramer v. Mary Riss.

1. Courts—*Erroneous Action by the Presiding Judge.*—The act of the presiding judge during the progress of a trial in asking leading and suggestive questions of a hesitating witness during a cross-examination is reversible error.

Assumpsit, for breach of marriage contract. Trial in the Circuit Court of Livingston County; the Hon. George W. Patton, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Reversed and remanded. Opinion filed September 26, 1898.

John H. Shay and Arthur H. Shay, attorneys for appellant.

A. P. Wright and Samuel P. Hall, attorneys for appellee.

Mr. Justice Wright delivered the opinion of the court.

The jury in the trial court awarded the appellee $2,175 damages against appellant for a breach of a promise to marry, and the court, after requiring a remittitur of $675, overruled appellant's motion for a new trial and gave judgment against him for $1,500, from which he has appealed to this court. Appellant, by his counsel, has insisted that

(623)

the verdict is contrary to the evidence, the court admitted improper evidence, asked improper questions of the witnesses, misdirected the jury and refused it proper instructions, and that the damages for which the judgment was rendered are excessive. There is no conflict in the evidence concerning the promise of appellant to marry the appellee, nor as to his refusal to do so, both these essential points being in effect conceded, and that the marriage was to have occurred March 10, 1897, and substantially all preliminary preparations and arrangements for the wedding had been completed. Both contracting parties had lived, about six years, within a short distance of each other, upon neighboring farms—the appellant alone, the appellee with her father, and from the length of time they had lived so near each other, it is but reasonable to suppose they knew something of one another, if not personally acquainted in the common acceptance of that term.

Appellant at the trial sought to justify his refusal to marry the appellee, and renews the same excuse in this court, upon the ground of alleged improper conduct of the appellee occurring after his promise to marry her. It appears from the evidence that on February 27, 1897, the parties went to Streator together, when appellant purchased a ring for appellee, and there made some other preparations for the marriage. They had previously accepted an invitation to attend a party at the home of a neighbor, to be given that evening; and on the way there they drove to the house of appellant, where the young woman prepared supper, after which they drove to Rush's, the place of the party. They left Rush's between twelve and one o'clock that night. After this time there is much conflict in the testimony of the two parties with reference to what occurred, except that both agree they went to the home of appellant and there slept in the same bed until the next morning, and that no illicit intercourse was indulged in, although appellee claims it was attempted by appellant, and because of her resistance remained unaccomplished. They each accuse the other with being at fault for the indiscretion of this night, appellant

insisting appellee did it against his objection, while on the other hand, she insists she was persuaded thereto by appellant. This contention of the parties was a material issue of fact, and vital to both sides of the case, requiring accurate and proper rulings of the court upon questions affecting it, both in the admission of evidence and the examination of the witnesses. In her examination in chief appellee was asked the question: "State to the jury what took place after you went in the house? A. Stood by the stove awhile; afterward he said it was time to go to bed, and he went; of course he wanted me to go with him." On the cross-examination concerning this point the appellee had stated that after appellant went to bed she stood by the stove about ten minutes, and the question was then asked: "Well, where did you go when you first moved, after he had gone to bed, and you were standing there ten minutes; then where did you move?" There was no answer to this question, and it would seem the witness was either abashed or unwilling, but in either case it was the right of counsel to have the jury see the conduct of the witness, and determine her motives and credibility, without interference with such right. It was also the privilege of counsel to insist upon an answer to the question or to waive the answer, and at this particular point in the cross-examination they could demand this privilege as a right. The court, however, while the question just quoted was pending and unanswered, of its own motion, then asked the witness: "Did you afterward go into the bedroom? A. Yes." "By the Court: Did you go in voluntarily or did he pull you in?" To this question the defendant objected, but the court overruled the objection, to which exception was duly taken. The witness then answered, "He pulled me in." We think this action of the court unduly deprived the appellant of the proper force of his cross-examination of one of - the interested witnesses; besides, the question was leading and suggestive, and also improper, because defendant testified he had assigned another room to plaintiff and had not invited her to his apartments. This action of the court was such an error, in

view of the amount of damages assessed, as requires a reversal of the judgment. See Dunn v. People, 172 Ill. 595.

Complaint is made of the instructions to the jury, but we find no material error in them, and inasmuch as the cause must be remanded for another trial, we refrain from discussing the question made against the damages as being excessive.

For the error indicated, the judgment of the Circuit Court will be reversed and the cause remanded.